**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| M&I Marshall and Isley Bank, | ) | No. CV-10-01657-PHX-FJM |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| Jay Neal Wright II, et al. | ) | |
| Defendants. | ) | |

The court has before it defendant Lawyers Title of Arizona, Inc.'s motion to dismiss (doc. 45), plaintiff M&I Bank's response (doc. 55), and Lawyers Title's reply (doc. 62). We also have before us defendant First American Title Insurance Company's motion to dismiss (doc. 29), plaintiff's response (doc. 52), and First American's reply (doc. 53). Finally, we have before us First American's joinder in Lawyers Title's motion (doc. 54), plaintiff's response (doc. 56), and First American's reply (doc. 59).

**I**

According to plaintiff, defendants Jay and Charlotte Wright, with the help of several other individual defendants, used defendant Cheryl Davis's identity to purchase a home in Queen Creek, Arizona in July 2005. They allegedly submitted a home loan application to plaintiff containing false employment and income information and a forged signature.

1  Plaintiff approved a loan in the amount of $171,000.00.  They also allegedly forged Davis's
2  signature on the closing documents and on a deed of trust executed to secure the loan.
3        Lawyers Title, through a predecessor, acted as the closing agency on behalf of First
4  American, the title insurer.  According to plaintiff, Lawyers Title failed to follow plaintiff's
5  closing instructions, which called for Davis to sign the documents in person with proper
6  identification. First American issued plaintiff a title insurance policy and a closing protection
7  letter.  The policy insures against loss or damages sustained by reason of title defects or the
8  invalidity or unenforceability of the deed of trust.  First Amended Complaint, ex. 4 at 4.
9  Through the closing protection letter, First American agreed to reimburse plaintiff for any
10 actual loss arising out of Lawyers Title's fraud or dishonesty in handing documents or its
11 failure to comply with plaintiff's closing instructions to the extent that they applied to the
12 validity or enforceability of the deed of trust.  Id., ex 5 at 2-3.
13       In March 2008, after the loan went into default, Davis allegedly informed plaintiff that
14 the loan was fraudulent and that she did not authorize it or the purchase of the property.  She
15 allegedly implicated the Wrights.  Nevertheless, plaintiff noticed a trustee's sale and bought
16 the property at the sale in June 2009.  It allegedly paid about $140,000.00 less than the
17 outstanding balance on the loan.  In its briefs, but not in its First Amended Complaint,
18 plaintiff alleges that it filed a deficiency action against Davis in July 2009, which it dismissed
19 in June 2010 because Davis's signature on the loan was forged.  On October 21, 2009,
20 plaintiff apparently submitted a claim to First American under the title insurance policy and
21 the closing protection letter.  First American allegedly failed to respond.  According to an
22 undisputed recorded document, plaintiff sold the property through a special warranty deed
23 in November 2009.  First American's Motion to Dismiss, ex. 1 at 2.
24       Plaintiff alleges negligent misrepresentation and breach of contract claims against
25 Lawyers Title due to its failure to comply with plaintiff's closing instructions.  With respect
26 to First American, plaintiff seeks a declaration of the parties' obligations under the title
27 insurance policy.  It also alleges breach of contract and bad faith denial of coverage claims
28 against First American due to its failure to respond to plaintiff's claim under the policy.

1  Although not relevant to the present motions, plaintiff also alleges tort claims against the
2  individual defendants.

**II**

4  Lawyers Title challenges plaintiff's contract and tort claims based on A.R.S. § 33-814,
5  which provides the conditions under which a deficiency can be recovered after a trustee's
6  sale pursuant to Arizona's deed of trust statute, A.R.S. § 33-807.  Under § 33-814(A), a
7  deficiency action may be maintained within 90 days of the trustee's sale against any person
8  liable on the contract secured by the deed of trust.  In such an action, the court sets the
9  deficiency as the amount owed the beneficiary on the date of the sale, less the fair market
10 value of the trust property or the sale price, whichever is higher.  A.R.S. § 33-814(A).  If less
11 than all of the property is sold, or there are multiple deeds of trust, § 33-814(B) sets the date
12 when "the ninety day time limitations of subsection A of this section shall begin."  Lawyers
13 Title relies on the following provision:

> If no action is maintained for a deficiency judgment within the time period
> prescribed in subsections A and B of this section, the proceeds of the sale,
> regardless of amount, shall be deemed to be in full satisfaction of the
> obligation and no right to recover a deficiency in any action shall exist.

Id. § 33-814(D).  As a general matter, § 33-814 forces a beneficiary dissatisfied with the
proceeds of a trustee's sale to pursue deficiency actions against those liable on the debt
within 90 days.  Id. § 33-814(A).  If the beneficiary chooses not to maintain a deficiency
action within 90 days, the proceeds are deemed to fully satisfy the debt.  Id. § 33-814(D); see
ING Bank v. Mata, No. CV-09-748-PHX-GMS, 2009 WL 4672797, at *2 (D. Ariz. Dec. 3,
2009) (discussing the effect of § 33-814(D)).

Lawyers Title contends that plaintiff seeks what are, in effect, deficiency damages
through its contract and tort claims.  Lawyers Title is not liable on the home loan, and it does
not assert that plaintiff is bringing an untimely deficiency action within the meaning of § 33-
814(A).  Instead, it argues that, under § 33-814(D), the home loan has been deemed fully
satisfied and plaintiff cannot seek deficiency damages "in any action."  By its terms, § 33-
814(D) only applies "[i]f no action is maintained for a deficiency judgment" within 90 days

- 3 -

1 of the trustee's sale. Lawyers Title does not contend that this condition was met. In its
2 response, plaintiff alleges that it filed a deficiency action against Davis a month after the
3 trustee's sale, but it does not attach any significance to doing so. Lawyers Title does not
4 mention plaintiff's alleged deficiency action in its reply. Because Lawyers Title fails to
5 address whether plaintiff filed a timely deficiency action, a threshold issue to the application
6 of § 33-814(D), we deny its motion to dismiss.

## III

First American challenges plaintiff's claims under the title insurance policy based on plaintiff's sale of the property in November 2009. It relies on Section 2(b) of the policy's Conditions and Stipulations, which provides the following:

> After Conveyance of Title. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest.

First Amended Complaint, ex. 4 at 6. First American contends that plaintiff did not retain an interest or hold a debt secured by a purchase money mortgage after it sold the property. Because plaintiff sold the property through a special warranty deed, which limited its liability for title defects, First American also contends that any liability plaintiff might face due to covenants of warranty would fall within certain policy exclusions.

If First American is correct, the coverage period of plaintiff's policy ended in November 2009. As plaintiff points out, however, this action concerns damages allegedly sustained before it sold the property. Indeed, plaintiff allegedly submitted a claim to First American for these damages in October 2009. When the coverage period ends pursuant to Section 2(b) of the Conditions and Stipulations, coverage may still exist for damages sustained during the coverage period, even if a claim is submitted after the coverage period. See Chicago Title Ins. Co. v. 100 Inv. Ltd. P'ship, 355 F.3d 759, 765-66 (4th Cir. 2004) (interpreting the same standard language under Maryland law). Obviously, the end of the coverage period would not affect claims submitted during the coverage period. We deny

- 4 -

1  First American's motion to dismiss based on Section 2(b).

2  First American also argues that plaintiff's claims under the policy fail because the
3  deed of trust at issue was valid and enforceable. Plaintiff alleges that the deed of trust was
4  invalid and unenforceable because it was forged. We cannot resolve this dispute on a motion
5  to dismiss.

6  Next, First American asserts in its reply that plaintiff did not sustain any covered
7  damages because it was able to foreclose on the deed of trust, whether or not it was valid.
8  It also asserts that plaintiff waived any claim based on the invalidity or unenforceability of
9  the deed of trust by foreclosing on it. Moreover, First American maintains that plaintiff's bad
10 faith denial of coverage claim fails because the claim plaintiff submitted did not require an
11 investigation. To the extent that these contentions can be addressed at the pleading stage, we
12 decline to do so because they were raised for the first time in a reply.

13 Finally, First American challenges the sufficiency of the First Amended Complaint
14 to state a claim under the closing protection letter. In its response, plaintiff articulates a
15 theory of relief under the letter based, in large part, on Lawyers Title's allegedly false
16 certification that it complied with plaintiff's closing instructions. This allegation does not
17 appear in the First Amended Complaint. Indeed, plaintiff only mentions the letter in the
18 context of one cause of action. First Amended Complaint ¶¶ 38-39. For this cause of action,
19 plaintiff identifies the closing protection letter as separate from the title insurance policy, but
20 it does not seek relief under the letter. Id. ¶ 46. Because plaintiff does not purport to allege
21 a claim under the closing protection letter, there is no claim to dismiss. If plaintiff wishes
22 to allege a claim under the letter, it must move for leave to file an amended complaint with
23 a proposed amended complaint. Should it seek to add a bad faith denial of coverage claim,
24 it is advised to address First American's assertion that such a claim is not cognizable because
25 closing protection letters are not insurance.

26 Accordingly, **IT IS ORDERED DENYING** Lawyers Title of Arizona, Inc.'s motion
27 to dismiss (doc. 45).
28 / / /

1 **IT IS FURTHER ORDERED DENYING** First American Title Insurance Company's motion to dismiss (doc. 29).

DATED this 19th day of January, 2011.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge